A07A2038. THOMPSON v. THE STATE.
(658 SE2d 122)

MIKELL, Judge.
Francis Randy Thompson appeals from the denial of his motion to suppress evidence seized during a traffic stop.

> In reviewing a trial court's denial of a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and we review de novo the trial court's application of the law to the undisputed facts. Additionally, we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous.[1]

So construed, the record shows that Thompson was stopped after Officer K. L. Reed of the Gwinnett County Police Department randomly checked his vehicle's tag and learned that the tag on the vehicle was registered to a different vehicle. Officer Reed, the sole witness at the suppression hearing, testified it is a violation of the law to display an improper tag and that she randomly checked license plates as a part of her patrol duties. Upon stopping Thompson, Reed asked him for his identification, and Thompson replied that he had none. Reed testified that she then asked Thompson to step out of the vehicle, frisked him for weapons, and placed him under arrest for driving without a license.

While searching Thompson incident to his arrest, Reed found a plastic bag containing pills and a marijuana joint in Thompson's pocket. During the search, Reed also found an identification card, prompting Thompson to admit that his license was suspended. Thompson was charged with violations of OCGA §§ 16-13-30 (a) (possession of controlled substances), 16-13-30 (j) (possession of

---

[8] (Footnote omitted.) *Whitener v. State*, 272 Ga. App. 28, 31 (2) (611 SE2d 707) (2005).
[1] (Footnotes omitted.) *Bennett v. State*, 285 Ga. App. 796-797 (648 SE2d 126) (2007).

marijuana), and 40-5-121 (driving while license suspended or revoked). Thompson filed a motion to suppress the evidence seized from his person, arguing that the stop was illegal because the officer was not permitted to stop him solely based upon the improper tag. The trial court denied the motion, and we affirm.

"Under the U. S. Constitution, a traffic stop is reasonable where the police have probable cause to believe that a traffic violation has occurred."[2] Therefore,

> when an officer sees a traffic offense occur, a resulting traffic stop does not violate the Fourth Amendment even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances. The result is the same under the Georgia Constitution.[3]

In this case, the officer stopped Thompson because his vehicle bore a license plate issued for another vehicle, which is a violation of OCGA § 40-2-6.[4]

In *Cunningham v. State*,[5] we concluded that a police officer was authorized to stop a vehicle based upon a violation of OCGA § 40-2-6.[6] Although after arresting the defendant, the officer discovered that the dispatcher had given him misinformation,[7] we concluded that we could not in hindsight declare the stop based on the improper tag invalid, implying that the stop based solely upon what the officer reasonably thought was a violation of OCGA § 40-2-6 was permissible.[8] Therefore, because officers are authorized to stop vehicles for

---

[2] (Citation and punctuation omitted.) *Maxwell v. State*, 249 Ga. App. 747, 748 (549 SE2d 534) (2001), citing *Whren v. United States*, 517 U. S. 806, 810 (II) (116 SC 1769, 135 LE2d 89) (1996). See *Navicky v. State*, 245 Ga. App. 284, 285 (1) (537 SE2d 740) (2000) (the commission of a traffic offense observed by an officer authorizes the stop of a vehicle).

[3] (Citations and punctuation omitted.) *Maxwell*, supra.

[4] The statute provides, in relevant part, that "any person . . . who shall knowingly operate a vehicle bearing a license plate issued for another vehicle and not properly transferred as provided by law shall be guilty of a misdemeanor."

[5] 231 Ga. App. 420 (498 SE2d 590) (1998).

[6] Id. at 421-422 (1).

[7] Id. at 420 (1).

[8] Id. at 422 (1). See also *Self v. State*, 245 Ga. App. 270, 274 (3) (a) (537 SE2d 723) (2000) ("the potential violation of OCGA § 40-2-6 supported the stop of the vehicle"). See generally *Dawson v. State*, 271 Ga. App. 217, 220 (2) (a) (609 SE2d 158) (2005) (rejected defendant's claim that officers did not have a particularized and objective basis for suspecting criminal activity sufficient to justify running the tag on his vehicle). Compare *State v. Dixson*, 280 Ga. App. 260, 262-263 (633 SE2d 636) (2006) (stop of vehicle based upon National Crime Information Center report that the insurance status of the vehicle was "unknown" was not authorized because said status did not constitute specific, articulable facts sufficient to raise reasonable suspicion of criminal activity).

traffic violations,[9] we conclude that the stop was valid in this case and affirm the trial court's denial of Thompson's motion to suppress.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 14, 2007 —
RECONSIDERATION DENIED FEBRUARY 20, 2008 ▇▇▇▇▇

*Sexton & Sexton, James D. Sexton, Giles D. Sexton,* for appellant.
*Daniel J. Porter, District Attorney, Thomas J. Ludlam, Assistant District Attorney,* for appellee.

---

[9] In *Hampton v. State,* 287 Ga. App. 896 (1) (652 SE2d 915) (2007), citing *Navicky, supra,* we held that an officer had probable cause to stop a vehicle based on the officer's observation of a nonfunctioning tag light, which was a traffic violation. In *Bailey v. State,* 283 Ga. App. 365, 367 (1) (641 SE2d 548) (2007), we held that a stop was authorized because the officer observed that the defendant was not wearing a seat belt, and "when an officer observes a traffic law violation, the resulting stop is not pretextual." (Punctuation and footnote omitted.)