**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 21, 2021**

# In the Court of Appeals of Georgia

A20A2002. ROMAINE v. THE STATE.

PER CURIAM.

Following a bench trial, Durell George Romaine[1] was convicted of one count of armed robbery, two counts of aggravated assault, and one count of possession of a firearm during the commission of a felony. Prior to trial, Romaine filed a motion to suppress, arguing that the police officer who stopped him after the robbery lacked reasonable suspicion. The trial court denied Romaine's motion, and he now appeals the denial of his motion to suppress. Finding no error, we affirm.

When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis

---

[1] Romaine's first name also is spelled "Durrell" in the record.

for the decision. The evidence is construed most favorably to uphold the trial court's findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

*Stroud v. State*, 286 Ga. App. 124, 125 (1) (648 SE2d 476) (2007). "An appellate court determining whether a search was lawful may consider all relevant evidence of record, including that adduced at a pretrial suppression hearing and at trial." Id. The trial court's application of the law to undisputed facts is subject to de novo review. *Thompson v. State*, 289 Ga. App. 661, 661 (658 SE2d 122) (2007).

Viewed in the light most favorable to the trial court's findings and judgment, the evidence adduced at the suppression hearing and at the bench trial on stipulated facts showed that on November 3, 2017, a young man dressed in gray sweatpants, a gray jacket, and a blackface covering entered a GameStop store in Peachtree Corners. He pointed a black semiautomatic firearm at a customer and directed the store clerk to empty two separate cash registers. The robbery was captured on surveillance video. During the robbery, the clerk gave the assailant a cash bundle with a tracker in it, and when the robber fled the store, the tracker was activated.

2

Information about the robbery was broadcast to local police, including the tracker's GPS location, which was emitted in real time. Police also issued a "be on the lookout alert" for the robber, which included the suspect's age and race and that he was wearing gray sweatpants and a gray sweatshirt. Shortly after the robbery, the tracker's movements slowed at the corner of Medlock Bridge Road and Peachtree Industrial Boulevard in Norcross, and several officers converged there. On that corner are several businesses, including a gas station, a restaurant, and a hotel.

One of the officers broadcast over the radio that he observed an individual who fit the suspect's description walking behind the restaurant toward the hotel**.**, Officer Marcus Sales of the Norcross Police Department heard the broadcast and drove to the rear of the hotel to stop the possible suspect. Officer Sales saw no pedestrians, but he did see a Toyota backing out of a parking space.[2] No other vehicles were in motion.

Officer Sales stopped the Toyota and made contact with Romaine, who was driving. Romaine was wearing gray sweatpants and matched the general description of

---

[2] On appeal, Romaine argues that there were other people present behind the hotel, but Officer Sales testified there was no one else present in the lot. The trial court found this testimony to be credible, and we must accept this determination because it is supported by some evidence. See *Stroud*, 286 Ga. App. at 125 (1).

3

the suspect, and Officer Sales detained him. Romaine gave his consent to search the car, and during the subsequent search, police found a gray sweatshirt, a black mask, a black semiautomatic pistol, cash, a bill that had something – possibly a tracker – cut out of it, and a GameStop bag. Romaine was arrested and interviewed by police, and he made incriminating statements.

As noted, prior to trial, Romaine filed a motion to suppress, arguing that the stop of his vehicle was not supported by reasonable suspicion. The trial court denied the motion following a hearing, and the case proceeded to a bench trial, where Romaine renewed his objection. At trial, surveillance video of the robbery was played, along with a video of Romaine's statements to police. The trial court convicted Romaine as set forth above. He filed a motion for new trial, which wa denied, and this appeal follows.

On appeal, Romaine contends that because Officer Sales did not personally observe him on foot or see him engage in any illegal activity prior to the traffic stop, he lacked reasonable suspicion to make the stop. We disagree.

"There are at least three types of police-citizen encounters: verbal communications that involve no coercion or detention; brief stops or seizures that

4

must be accompanied by a reasonable suspicion; and arrests, which can be supported only by probable cause." *Jones v. State*, 291 Ga. 35, 37 (1) (727 SE2d 456) (2012) (punctuation omitted). "For a traffic stop to be valid, an officer must identify specific and articulable facts that provide a reasonable suspicion that the individual being stopped is engaged in criminal activity." Id. at 38 (2). In determining whether there is reasonable suspicion, the totality of circumstances – the whole picture – must be taken into account. See *Jones v. State*, 314 Ga. App. 107, 109 (722 SE2d 918) (2012); see also *United States v. Cortez*, 449 U. S. 411, 417 (II) (A) (101 SCt 690, 66 LE2d 621) (1981). Moreover, "reasonable suspicion may exist based on the collective knowledge of the police when there is reliable communication between the officer supplying the information and the officer acting on that information instead of the arresting officer's knowledge alone." *State v. Pennyman*, 248 Ga. App. 446, 447 (545 SE2d 365) (2001). So long as an officer has reasonable suspicion, a brief investigatory stop is permitted even if the officer does not personally observe the defendant commit a traffic violation or other criminal act prior to the stop. *Cheatham v. State*, 204 Ga. App. 483, 484 (1) (419 SE2d 920) (1992).

As set forth above, the GPS tracker taken during the robbery led police to a particular corner where three businesses were located. Police had a general

description of the robber, as well as a description of his clothing, and an officer saw a person matching that description walking from the restaurant toward the hotel and broadcast this information over the radio. Based on this broadcast, Officer Sales drove around to the hotel parking lot where he saw one vehicle attempting the leave. Thus, the collective knowledge of the officers established that the suspect was in the vicinity, a person matching the suspect's description was headed toward the hotel, anda single vehicle wasattemptingtoleave the hotelparkinglot. See *Pennyman*, 248 Ga. App. at 447. This totality of circumstances gave police specific and articulable facts to believe that the driver of the vehicle may have been the suspect, thus providing reasonable suspicion for the traffic stop. See *Jones*, 314 Ga. App. at 110 (finding reasonable suspicion for stop when deputy "upon arriving in the vicinity of the area where law enforcement was dispatched because of a domestic disturbance andshotsfired,andbeinginformedbyanother deputythatthe vehicle waspullingout ofthe driveway," saw only defendant's vehicle pull out of a driveway). The combination of the GPS evidence and the fact that an officer observed a person matching the suspect's description walk toward the hotel just prior to the traffic stop distinguish this case from *State v. Dias*, 284 Ga. App. 10 (642 SE2d 925) (2007), uponwhichRomaine relies.See id. at12-14(2) (affirmingtrialcourt's grant of

6

defendant's motion to suppress when police had only general description of automobile and suspect and there was no indication of the size of the area in which offender could be found). On this record, the trial court did not err in denying Romaine's motion to suppress.

*Judgment affirmed. Division Per Curiam. All Judges concur.*